**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANIELA FLORES,
*on behalf of herself, FLSA Collective Plaintiffs*
*and the Class,*

                          Plaintiff,

                          v.

MISSION CEVICHE, LLC
        d/b/a MISSION CEVICHE,
MISSION CEVICHE UES INC
        d/b/a MISSION CEVICHE,
MISSION CEVICHE CANAL LLC
        d/b/a MISSION CEVICHE,
MISSION CEVICHE NOMAD LLC
        d/b/a MISSION CEVICHE,
JOSE LUIS CHAVEZ,
BRICE MASTROLUCA, and
MIGUEL YARROW,

                        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiff, DANIELA FLORES (herein, "Plaintiff"), on behalf of herself and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, MISSION CEVICHE, LLC d/b/a MISSION CEVICHE, MISSION CEVICHE UES INC d/b/a MISSION CEVICHE, MISSION CEVICHE CANAL LLC d/b/a MISSION CEVICHE, MISSION CEVICHE NOMAD LLC d/b/a MISSION

CEVICHE, ("Corporate Defendants"), JOSE LUIS CHAVEZ, BRICE MASTROLUCA, and MIGUEL YARROW ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages including overtime due to time-shaving;  (2) unpaid wages due to improperly deducted meal credits; (3) illegal retention of gratuities;  (4) unpaid wages, including overtime, due to an invalid tip credit; (5) liquidated damages; and  (6) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages including overtime due to time-shaving; (2) unpaid spread of hours premiums, (3) unpaid minimum wages due to invalid tip credit; (4) unpaid wages due to improperly deducted meal credits; (5) illegal retention of gratuities; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

3.    Plaintiff additionally alleges that Defendants unlawfully retaliated against her, in violation of the FLSA and NYLL shortly after Plaintiff made a lawful complaint regarding the Defendants' tip pool allocations and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.  Plaintiff, DANIELA FLORES, is a resident of Queens County, New York.

7.  Defendants JOSE LUIS CHAVEZ, BRICE MASTROLUCA, AND MIGUEL YARROW owned and operated three MISSION CEVICHE restaurants throughout New York City.

8.  Corporate Defendant MISSION CEVICHE, LLC d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 1400 2nd Ave, New York, NY 10021, and the address of service at c/o United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, NY 11228.

9.  Corporate Defendant MISSION CEVICHE UES, INC. d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 1400 2nd Ave, New York, NY 10021, and the address of service at c/o Brice Mastroluca, 353 West 14th Street, New York, NY 10014.

10.  Corporate Defendant MISSION CEVICHE CANAL LLC d/b/a MISSION CEVICHE a domestic limited liability company with a principal place of business located at 261 Canal Street, New York, NY 10013, and the registered address at c/o Brice Mastroluca, 353 West 14th Street, New York, NY 10014.

11.  Corporate Defendant MISSION CEVICHE NOMAD LLC d/b/a MISSION CEVICHE is a domestic limited liability company with a principal place of business located at 57 E 17th Street, New York, NY 10003, and the address of service at c/o Brice Mastroluca, 1400 Second Ave, New York, NY 10021.

12.    Individual Defendant JOSE LUIS CHAVEZ is the owner and principal of the Corporate Defendants. JOSE LUIS CHAVEZ exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. JOSE LUIS CHAVEZ had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class members at Defendants' restaurants.

13.    Individual Defendant BRICE MASTROLUCA is the owner and principal of the Corporate Defendants. BRICE MASTROLUCA exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. BRICE MASTROLUCA exercised functional control over the business and financial operations of the Corporate Defendant. BRICE MASTROLUCA had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class members at Defendants' restaurants.

14.    Individual Defendant MIGUEL YARROW is the chief executive office and general manager of the Corporate Defendants. MIGUEL YARROW exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. MIGUEL YARROW had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff, FLSA Collective Plaintiffs and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms,

and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class members at Defendants' restaurants.

15.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

16.    Defendants BRICE MASTROLUCA and JOSE LUIS CHAVEZ, own and operated MISSION CEVICHE, located at three (3) locations in New York City:

   a.  Mission Ceviche Restaurant – 1400 2nd Ave, New York, NY 10021 ("2nd Ave" location);

   b.  Mission Ceviche Restaurant – 261 Canal Street, New York, NY 10013 ("Canal Street" location);

   c.  Mission Ceviche Restaurant – 353 West 14th Street, New York, NY 10014 ("W14th St" location).

17.    Defendants' Canal Street and W14th St locations closed for business in 2019. Currently, Defendants only operate MISSION CEVICHE restaurant at 1400 2nd Ave, New York, NY 10021.

18.    All restaurants have been owned, managed, and operated by Individual Defendants JOSE LUIS CHAVEZ, BRICE MASTROLUCA and MIGUEL YARROW. All the locations operated under the name MISSION CEVICHE. Defendants engaged in identical activities, shared common ownership and have a common business purpose:

   a)  All   the   locations   were   jointly   shown   on   a   common   website: https://missionceviche.com/locations/. *See* **Exhibit A:** Screenshot of the location page;

   b)  All the locations had a common menu;

c) All the locations were advertised as one entity with different locations. *See* **Exhibit B:** News Articles;

d) The Restaurants share common ownership through Individual Defendants. *See* **Exhibit C;**

e) See the Individual Defendants BRICE MASTROLUCA and JOSE LUIS CHAVEZ listed as the principal(s) on the liquor license associated with the Defendants' current address of operation. *See* **Exhibit D**;

f) All the locations were advertised on a common Instagram page, https://www.instagram.com/missionceviche/?hl=en, and a common Facebook page, https://www.facebook.com/MissionCeviche/; and

g) Defendants provided the same terms of employment to all employees.

19.     At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA and NYLL and the regulations thereunder.

20.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, servers, runners, bussers, porters, among others)  employed by Defendants on or after the date that is six (6) years before the parties' October 19, 2023, Tolling Agreement and Addendums of Extension (attached as **Exhibit E**) (herein, "FLSA Collective Plaintiffs").

22.   At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving, and (ii) unpaid wages, including overtime due to improper deduction of meal credits.  Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they improperly retained gratuities, and failed to satisfy all statutory requirements for taking a tip credit.

23.   The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

24.   The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

25.   Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, servers, runners, bussers, porters, among others) employed by Defendants at all locations, on or after the date that is six years before parties' October 19, 2023, Tolling Agreement and Addendums of Extension (attached as **Exhibit E**) (the

"Class Period").

26.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

28.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including: (i) failing to pay all earned wages, including overtime wages, due to a policy of time shaving, (ii) failing to pay spread of hours premium, (iii) improperly deducting meal credits, (iv) failing to provide wage statements in compliance with the NYLL, and (v) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.

Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.    Furthermore, Plaintiff and the Tipped Subclass also suffered as a result of Defendants' failure to pay them the proper minimum wage, Defendants' unlawful withholding of gratuities through an invalid tip pooling scheme, and Defendants' unlawful misappropriation of the tips that they earned. Plaintiff and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL. In violation of the NYLL, Defendants (i) failed to properly provide tip credit notice, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for more than thirty (30) minutes of uninterrupted and continuous non-tipped work, (iv) implemented an invalid tip pool scheme whereby managers and non-tipped employees participated, (v) failed to accurately track daily tips earned or maintain records thereof, (vi) failed to properly provide tip credit notice at hiring and annually thereafter, and (vii) failed to provide a proper wage statement with every payment of wages informing Plaintiff and Class members of the amount of tip credit deducted for each payment period.

30.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c.   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d.   Whether Defendants properly notified Plaintiff and Class members of their hourly rates and overtime rates;

e.   Whether Defendants paid Plaintiff and Class members the proper compensation for all the hours worked under the NYLL;

f.   Whether Defendants properly compensated Plaintiff and Class members the proper minimum wage under the NYLL;

g.   Whether Defendants properly provided written notice to all tipped employees, in their native language, regarding Defendants' tip credit;

h.   Whether Defendants caused tip employees to engage in non-tipped duties exceeding 20% or 2 hours of their work shift;

i.   Whether Defendants caused tip employees to engage in non-tipped duties exceeding thirty (30) minutes continuously;

j.   Whether Defendants instituted an improper tip pool whereby managers and/or non-tipped employees participated;

k.    Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

l.    Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

m.    Whether Defendants illegally retained gratuities to pay other employees;

n.    Whether Defendants properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

o.    Whether employees actually consumed the credited meals provided by Defendants; and

p.    Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

## STATEMENT OF FACTS

34.    In or around August 2022, Plaintiff DANIELA FLORES was hired by Defendants to work as a Server for Defendants at their MISSION CEVICHE restaurant, located at 1400 2nd Ave, New York, NY 10021.  Plaintiff was employed by Defendants until or around April 2023.

35.    Throughout her employment, Plaintiff typically worked four (4) days per week for approximately eight (8) hours a day. Plaintiff worked approximately thirty-two (32) hours a week. Despite this schedule Plaintiff was frequently asked to work longer hours or extra shifts in a week and, therefore, Plaintiff regularly worked overtime hours in a week.  One such week occurred for the week of September 5, 2022, to September 11, 2022.  For this week, Plaintiff worked a total of 46.53 hours.

36.    FLSA Collective Plaintiffs and the Class similarly worked weeks of forty (40) hours or more.

37.    Throughout her employment, Plaintiff was compensated tip credit minimum wage. FLSA Collective Plaintiffs and Tipped Employee Subclass were paid at similar rates.

38.    Plaintiff and Class members were not paid all of their wages or their overtime premiums at the rate of time and one half of the regular hourly rate, for all hours worked, due to Defendants' policy of clocking out Plaintiff and Class members at the end of their shift, but requiring them to engage in off-the-clock work. Once every week, Plaintiff was required to stay back for approximately thirty (30) minutes, but was required to continue performing work duties. Plaintiff and Class members were similarly required to clock-out for approximately thirty minutes a week, but were not compensated for the work they performed after clocking out.

39.    The above timeshaving violation resulted in unpaid overtime for Plaintiff for the week of September 5, 2022, to September 11, 2022.

40.    Plaintiff's, Tipped FLSA Collective Plaintiffs', and Tipped Subclass members' tip-credit was invalid as they were not provided all overtime earnings owed to them.  When Plaintiffs, Tipped FLSA Collective Plaintiffs, and Tipped Subclass members were paid for hours over forty in a workweek, they were at an impermissibly low overtime rate. Both the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 201 *et seq*. (FLSA), and regulations issued pursuant to the New York Labor Law require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week. 29 U.S.C.S. § 207(a)(1); 12 NYCRR § 146-1.4.  For tipped employees, the overtime rate is calculated by taking the employee's regular rate of pay ***before*** subtracting any tip credit, multiplying that rate of pay by one-and-one-half, and only then subtracting a tip credit. 29 U.S.C.S. § 203(m); 29 C.F.R. §§ 531.60, 778.5 (FLSA); 12

NYCRR § 146-1.4 (New York Labor Law). Consequently, under both federal and state law, it is a violation of the overtime requirement for an employer to subtract the tip credit first and then multiply the reduced rate of pay by one-and-one-half. 12 NYCRR § 146-1.4. Here, to find the tipped employees' overtime rate, Defendants improperly subtracted the tip credit from the employees' rate of pay prior to multiplying the employees pay rate by one-and-one-half.  For the week of September 5, 2022, to September 11, 2022, Plaintiff was improperly compensated at an overtime rate of $15.00 rather than the proper rate of $17.50.  *See Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 494 (S.D.N.Y. 2015) (finding a tip credit invalidated due in part to a failure to pay the proper tip-credit overtime rate).

41.    To be clear, the overtime rate for tip-credit employees is properly calculated by taking the employee's base rate of pay (for Plaintiff, $15.00 an hour) multiplying that figure by one-and-one-half (which would be $22.50), and only then subtracting the permitted tip credit (for Plaintiff $5.00) from the employees' base overtime rate ($22.50 - $5.00 = $17.50).  By subtracting the tip credit ($5.00) from the base rate of pay ($15.00 - $5.00 = $10.00) prior to multiplying by one-and-one-half ($10.00 x 1.5 = $15.00), employees are compensated overtime at an impermissibly low rate of pay.

42.    Tipped FLSA Collective Plaintiffs' and Tipped Subclass members' tip-credit would be invalid due to suffering similar undercalculations of overtime as Plaintiff.

43.    Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA § 203(m) and 12 NYCRR § 146-1.9, without regard to whether the meal credit deducted exceeds the meals' "reasonable cost"[1], whether the meals provided

---

[1] 29 C.F.R. § 531.3

satisfied New York State's nutritional requirements containing all four (4) food groups[2], and whether employees actually consumed the credited meals or not. FLSA Collective Plaintiffs and Class members similarly had meal credits improperly deducted from their wages. Plaintiff, FLSA Collective Plaintiffs, and Class members were mostly served leftover meals that did not fulfil the nutritional requirements under the FLSA and NYLL. Defendants claimed ten dollars ($10) towards meal credit from Plaintiff for every week, but Defendants did not provide adequate quantity of meals to suffice all employees. Moreover, Plaintiff, FLSA Collective Plaintiffs, and Class members were not provided with a lunch break, and Defendants were deducting meal credits knowing that Plaintiff, FLSA Collective Plaintiffs, and Class members could not avail themselves of the benefits of the meal credit so deducted.

44.    Throughout Plaintiff's employment, Defendants retained a percentage of all tips to pay non-tipped employees (e.g., kitchen staff, cleaners). Plaintiff had missing tips in every paycheck amounting to or around hundred dollars ($100) per week. Tipped FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants' illegal retention of tips.

45.    Throughout Plaintiff's employment, Defendants had formed a tip pool that included the silverware polishers and other kitchen staff, in violation of FLSA and NYLL. In addition, hostesses and maitre'd, who were paid above the tip credit rate and did not perform tipped duties, shared in the tip pool. Tipped FLSA Collective Plaintiffs and the Tipped Subclass similarly suffered from Defendants implementing an invalid tip pool with non-tipped employees.

46.    Throughout Plaintiff's employment, Defendants paid invalid "tip credit" minimum wage to Plaintiff, Tipped FLSA Collective Plaintiffs, and Tipped Subclass by paying them tip credit for hours spent in addition to thirty (30) minutes of continuous non-tipped work. Once every

---

[2] 12 NYCRR § 146-3.7

week, tipped employees were required to arrive early to service to help set up the kitchen and restaurant. Moreover, after service, tipped employees had to stay at least thirty (30) minutes to help clean up the premises. Plaintiff Tipped FLSA Collective Plaintiffs, and Tipped Subclass members suffered from approximately an hour of unpaid minimum wage per week, due to Defendants' violation.

47.     Throughout Plaintiff's employment, Defendants failed to appropriately maintain records of the tips earned by employees, leading to a discordant system and loss of wages to Plaintiff and Class Members.

48.     Defendants knowingly and willingly operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for all hours worked to Plaintiff, and Tipped Subclass members, due to an invalid tip credit, in violation of the FLSA and the NYLL.

49.     Defendants knowingly and willingly operated their business with a policy of not paying for all hours, and the overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members, in violation of the FLSA and the NYLL.

50.     Defendants knowingly and willingly operated their business with a policy of illegally retaining gratuities from Plaintiff and Tipped Subclass members, in violation of the FLSA and NYLL.

*Plaintiff's and Class Members' Wage Theft Prevention Act Claims:*

51.     Plaintiff and Class members never received wage notices accurately stating their base rate of hourly pay from Defendants. They also did not receive wage statements from Defendants accurately stating their base rate of hourly pay, overtime rate, or hours worked.

52.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—

Defendants knowingly and willfully operated their business with a policy of not providing accurate wage notices, stating employees' true base rate of hourly pay, to Plaintiff and Class members at the beginning of their employment with Defendants.

53.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

54.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As many Courts have observed, when paired with allegations of underpayments, the harm generated from the failure to provide such accurate notices and statements, is obvious on its face:

> Denying an employee such notices—as alleged here—can impinge on an employee's interests not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay. The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims. Consistent with this, multiple courts in this District have exercised jurisdiction over such claims, without requiring a specific

showing as to the downstream impact on the plaintiff of the non-provision of the required notice.

*Bueno v. Buzinover*, 2023 U.S. Dist. LEXIS 38154, *5-6 (S.D.N.Y. 2023) (Judge Paul A. Engelmayer) (collecting cases)

The wage statement and notice violations alleged here are of a different class of harm than those alleged in <u>*TransUnion*</u> and <u>*Maddox*</u>. The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." <u>*Bueno*</u>, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3 (quoting <u>*Imbarrato v. Banta Mgmt. Servs. Inc.*</u>, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)). Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wage they are owed. <u>*Bueno*</u>, 2023 U.S. Dist. LEXIS 38154, 2023 WL 2387113, at *3.

Here, although the plaintiffs' wage statement and notice claims allege only the bare assertion that they never received their statutorily required wage statements and notices, the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings. Had the sole allegation been one of failure to furnish statutorily mandated notices and statements absent the companion allegations of wage theft, plaintiffs may have encountered an issue of standing. But that is not the case here. The plaintiffs in this case allege a years-long practice of failing to pay proper wages, a pattern that was undoubtedly buttressed by their employer's failure to comply with the wage statement and notice provisions of the WTPA, which were designed to prevent this precise form of wage theft by informing employees of their pay rates and deductions.

*Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 106676, *27-29 (E.D.N.Y. 2023) (Judge Robert Levy); *report and recommendation adopted, Bello v. Pro-Line Pumping Corp.*, 2023 U.S. Dist. LEXIS 125632 (E.D.N.Y. 2023) (Judge Rachel P. Kovner).

55.    Other Courts have found standing exists where a plaintiff alleges that the failure to provide proper wage notices and statements resulted in one of the following: (i) delayed payment of all proper wages, (ii) deprived employees of the ability to immediately contest wage calculations, (iii) misled and/or confused employees as to their hours worked or rates of pay, and/or (iv) the inaccurate or absent wage notice and wage statements prevented employees from realizing the extent of their underpayments. *See e.g., Lipstein v. 20X Hospitality LLC*, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (Judge Jennifer L. Rochon) (finding standing where plaintiff alleged that the lack of wage notices and wage statements kept him from realizing that he was

being underpaid and thereby preventing him from taking appropriate action to obtain the payments due to him); *Metcalf v. TransPerfect Translations International, Inc.*, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) (Judge Edgardo Ramos) (finding standing where plaintiffs alleged that inaccurate wage notices and wage statements prevented them from knowing whether, and to what extent, they had been underpaid).

56.     Here, as in the cases described above, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay including overtime hours and overtime rates due to the wage violations described above, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, necessitated the current litigation to vindicate Plaintiff's and Class members' rights, and delayed Plaintiff's and Class members' retention of complete compensation. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

57.     Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the correct base rate of pay and total number of hours Plaintiff and Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours employees actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employees' wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class members to immediately vindicate their rights under the NYLL. The deprivation of these possibilities therefore

constitutes an injury as does the delay in receiving payment caused by them.

58.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

59.    Further, the failure to accurately record hours of work on earnings statements, which Defendants are mandated by law to undertake on behalf of Plaintiff and Class members, dissuaded reasonable workers, including Plaintiff, from raising complaints and advocating for their rights. Defendants created these false documents with under-recorded work hours for exactly the purpose of dissuading and inhibiting employees from exercising their rights under the NYLL and the FLSA to demand their back-pay.

60.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide its wrongdoing from employees, dissuaded reasonable workers from bringing claims ending Defendant's underpayment of wages sooner, and Defendants continue to attempt to hide its wrongdoing necessitating the current litigation.  The failure to provide NYLL notices delayed Plaintiff's and Class members' realization of underpayments and their extent, which in turn delayed the bringing of the current litigation, and delayed payment of all proper wages owed to Plaintiff and Class members.

61.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements, as required by the NYLL.

62.    The direct effect of understating the number of hours an employee worked is to reduce the wages that the employee is listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee's earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on

employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[3]

63.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

64.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200*

---

[3] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

65.    Here, it is clear that Defendant's failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury from both the delay in recouping payment, and in lost benefits. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendant submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

66.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs'

entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward v. Zurich Am. Ins. Co.*, No. 10 C 6695, 2011 U.S. Dist. LEXIS 74543, at *3-4 (N.D. Ill. July 8, 2011).

67.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and Class members, rather than merely misreporting their incomes. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and Class members lost benefits by virtue of how Defendants reported their incomes, and how Defendants reported employees' incomes was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

68.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

69.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

70.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendant *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2's to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

71.    Defendants knowingly and willfully failed to pay Plaintiff's, FLSA Collective Plaintiffs', and Class members' regular and overtime wages for all hours worked due to Defendant's time-shaving practices.

72.    At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rates of one-and-half times of their regular hourly rates for each hour exceeding forty (40) hours per workweek, in violation of the FLSA and the NYLL.

73.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

<u>*Plaintiff's Individual Claims for Retaliation Under FLSA and NYLL:*</u>

74.    Defendants retaliated against Plaintiff because Plaintiff objected to Defendants' willful and arbitrary practice of invalid tip retention. Due to an immediate and personal loss of

wages to Plaintiff, she complained regarding the policy to management and informed them about the missing tips from her paychecks. Plaintiff's requests and complaints were shrugged off and she was forced to continue working with the ongoing conditions.

75.    In or about April 2023, Plaintiff again objected to Defendants' tip policy. Defendants terminated Plaintiff's employment two weeks later without cause.

76.    Plaintiff's termination was a direct and proximate result of her protesting Defendants' practices of tip credit violation and improper tip pooling policies.

77.    Defendant violated New York State anti-retaliation laws of both the FLSA and NYLL for terminating Plaintiff for making a lawful complaint..

### STATEMENT OF CLAIM
### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

78.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

79.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

80.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

81.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

82.    At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit.

83.  At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiff and a subcollective of FLSA Collective Plaintiffs.

84.  At all relevant times, Defendants failed to compensate Plaintiff and tipped subcollective of FLSA Collective Plaintiffs for the non-tipped work exceeding continuous thirty (30) minutes.

85.  At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs regardless of whether the meal credit deducted exceed the meals "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

86.  Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

87.  Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

88.  Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

89.  As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the

FLSA.

90.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to time-shaving, unpaid wages and overtime due to an invalid tip credit, illegally retained gratuities, and unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

91.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

92.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

93.    At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

94.    At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Tipped Subclass members the proper minimum wage and overtime due to an invalid tip credit in direct violation of the NYLL.

95.    Defendants willfully violated the rights of Plaintiff and Tipped Subclass members by illegally retaining gratuities, in direct violation of the NYLL.

96.    Defendants failed to properly notify Plaintiff and the Tipped Subclass of their tips and tip pooling policies, in direct violation of the NYLL.

97.    Defendants willfully violated Plaintiff's and Class members' rights by improperly deducting meal credits from Plaintiff and Class members regardless of whether the meals provided

satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and Class members consumed the meals in question.

98.     Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

99.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

100.    Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

101.    Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants, unpaid wages due to an invalid tip credit, unpaid wages due to improperly deducted meal credits, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## <u>RETALIATION UNDER THE FAIR LABOR STANDARDS ACT</u>

102.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

103.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA

104.    Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

105.    As alleged herein, Plaintiff complained to Defendants and their managers regarding

Defendants invalid unpayment of wages. In response to such complaints, Defendants terminated Plaintiff under pretextual reasons in violation of Section 15(a)(3).

106.   Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

107.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

**COUNT IV**

**<u>RETALIATION UNDER THE NEW YORK LABOR LAW</u>**

108.   Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

109.   At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

110.   Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging her shortly after she raised her concerns about Defendants' unlawful policies regarding unpaid wages.

111.   In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

112.   Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any

29

other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

113.   Defendants' conduct was in willful disregard of the provisions of the NYLL.

114.   As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of back pay from lost earnings, compensatory damages, and punitive damages.. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award, pursuant to the FLSA and the NYLL, of unpaid wages, including overtime, due to timeshaving;

d.   An award, pursuant the FLSA and the NYLL, of unpaid wages, including overtime, due to an invalid tip credit;

e.   An award of gratuities illegally retained by Defendants, due under the FLSA and NYLL;

f.   An award of unpaid wages due to improperly deducted meal credits, due under the FLSA and the New York Labor Law;

g.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.   An award of all applicable damages due to Defendants' retaliatory conduct under the FLSA and NYLL;

i.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff as Representatives of the Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 10, 2024

Respectfully submitted,

By:   */s/ C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*