UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEY YORK
-------------------------------------------------------- X
DANIELA FLORES, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class*,

                      Plaintiff,

   -against-

MISSION CEVICHE, LLC
      d/b/a MISSION CEVICHE
MISSION CEVICHE UES INC
      d/b/a MISSION CEVICHE
MISSION CEVICHE CANAL LLC
      d/b/a MISSION CEVICHE
MISSION CEVICHE NOMAD LLC
      d/b/a MISSION CEVICHE
JOSE LUIS CHAVEZ
BRICE MASTROLUCA, and
MIGUEL YARROW,

                      Defendants.

-------------------------------------------------------- X

CASE NO.: 1:24-cv-03626-AS

---

## **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

GORDON REES SCULLY MANSUKHANI, LLP
*Attorneys for Defendants*
One Battery Park Plaza, 28th Floor
New York, New York 10004
(212) 269-5500

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A. LEGAL STANDARD ............................................................................................ 2

    B. PLAINTIFF FAILS TO SATISFY COMMONALITY AND TYPICALITY REQUIREMENTS FOR BOH EMPLOYEES AND BUSSERS ........................... 4

    C. PLAINTIFF FAILS TO SATISFY ADEQUACY REQUIREMENT FOR BUSSERS ............................................................................................................... 8

    D. PLAINTIFF FAILS TO SATISFY PREDOMINANCE REQUIREMENT FOR BUSSERS ............................................................................................................... 9

III. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591, 117 S.Ct. 2231 (1997) ..........................................................................................3

*Balverde v. Lunella Ristorante, Inc.*,
　15-cv-5518 (ER), 2017 WL 1954934 (S.D.N.Y. May 10, 2017) ...........................................2, 5

*Breitman v. Xerox Educ. Services, LLC*,
　12-cv-6583 (PAC), 2014 WL 5364103 (S.D.N.Y. Oct. 22, 2014) ............................................9

*Brown v. Kelly*,
　609 F.3d 467 (2d Cir. 2010) .......................................................................................................2

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
　502 F.3d 91 (2d Cir. 2007) .........................................................................................................3

*In re Currency Conversion Fee Antitrust Litigation*,
　230 F.R.D. 303 (S.D.N.Y. 2004) ................................................................................................3

*In re Drexel Burnham Lambert Group, Inc.*,
　960 F.2d 285 (2d Cir. 1992) .......................................................................................................3

*Eduoard v. Nikodemo Operating Corp.*,
　18-cv-5554 (BMC), 2019 WL 3557687 (E.D.N.Y. Aug. 5, 2019) ............................................6

*In re Independent Energy Holdings PLC Securities Litigation*,
　210 F.R.D. 476 (S.D.N.Y. 2002) ................................................................................................3

*Moore v. PaineWebber, Inc.*,
　306 F.3d 1247 (2d Cir. 2002) .....................................................................................................3

*Myers v. Hertz Corp.*,
　624 F.3d 537 (2d Cir. 2010) .......................................................................................................3

*Robidoux v. Celani*,
　987 F.2d 931 (2d Cir. 1993) .......................................................................................................3

*Scott v. Chipotle Mexican Grill, Inc.*,
　954 F.3d 502 (2d Cir. 2020) .......................................................................................................2

*Suvill v. Bogopa Service Corp.*,
　11-cv-3372 (SL) (RER), 2014 WL 4966029 (E.D.N.Y. Sept. 30, 2014) ..................................6

*Vengurlekar v. Silverline Technologies, Ltd.*,
    220 F.R.D. 222 (S.D.N.Y. 2003) ......................................................................................2

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................3

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie*,
    226 F.R.D. 446 (S.D.N.Y. 2005) ....................................................................................5

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................1, 2

Fed. R. Civ. P. 23(a) ..........................................................................................................4, 6

Fed. R. Civ. P. 23(b)(3) ..................................................................................................4, 5, 6

## I.    PRELIMINARY STATEMENT

The motion for class certification should be denied. Plaintiff Daniela Flores ("Plaintiff") seeks certification of all non-exempt front-of-house and back-of-house employees ("Putative Class"), as well as certification of a subclass consisting of all members of the class who received tips ("Putative Subclass"), employed at the restaurant, located at 1400 Second Avenue, New York, NY, otherwise known as Mission Ceviche UES ("MC UES"), on or after the date that is six years before October 19, 2023, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

The gravamen of Plaintiff's claims is that Defendants implemented an invalid tip credit with regard to the Putative Subclass, required the Putative Subclass to perform off-the-clock work, and improperly applied meal credit deductions to the Putative Class. In an effort to support her tip credit claim on behalf of the Putative Subclass, Plaintiff alleges, *inter alia*, that Defendants deducted an impermissibly high tip-credit amount from the Putative Subclass' overtime hours, failed to produce records of a tip-credit notice and daily tip log, and implemented improper tip pooling by wrongly classifying back-of-house staff members as bussers. Crucially, in asserting that Defendants improperly characterized certain employees, Plaintiff attempts to exclude members from the Putative Subclass and thus creates a conflict of interest between herself and these employees. Moreover, to prove this claim would require an individualized inquiry into the duties and requirements of these individuals' roles that is not proper for a class action.

In an effort to support her claims of time-shaving, Plaintiff alleges that she was required to arrive at work one hour before her shift began to prepare and was required to stay one-half hour late twice a month to count tips but was not paid for any of this time. Importantly, Plaintiff's assertions not only inaccurately represent when MC UES was open for business, she omits that such time was included in the schedule and that she was, in fact, paid for this time.

Finally, to buoy her assertion that Defendants subjected the Putative Class to an invalid meal credit deduction, Plaintiff relies primarily on her self-serving declaration and purported conversations with other front-of-house ("FOH") staff that they often did not eat the meals and that they did not consist of the adequate number of food groups. Plaintiff, however, does not even feign to demonstrate or incorporate the experiences of back-of-house ("BOH") employees or how those experiences might have been similar.

The individualized inquiries that would be required, Plaintiff's conflict of interest, the inaccuracies and omissions in Plaintiff's declaration, and Plaintiff's failure to demonstrate how the claims of BOH staff are similar to hers make this matter inappropriate for class action certification, and Plaintiff's motion should be denied.

## II. ARGUMENT

### A. LEGAL STANDARD

Under FRCP 23, a plaintiff seeking certification of a "class action must first establish numerosity, commonality, typicality, and adequacy of representation, and then predominance of common questions of law or fact and the superiority of a class action over other procedures." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). To certify a class, a district court must determine whether each Rule 23 requirement is established by at least a preponderance of the evidence. *See Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate [their] analysis." *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 230 (S.D.N.Y. 2003). To satisfy commonality, a plaintiff's claims must "'depend on a common contention that is of such a nature that it is capable of classwide resolution,' meaning that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Balverde v. Lunella Ristorante, Inc.*, 15-cv-5518 (ER), 2017

WL 1954934, at *6 (S.D.N.Y. May 10, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]he 'typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 308 (S.D.N.Y. 2004) (quoting *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993)).

"'[A]dequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another.'" *See In re Independent Energy Holdings PLC Securities Litigation*, 210 F.R.D. 476, 480 (S.D.N.Y. 2002) (quoting *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)).

The predominance requirement assesses whether the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231 (1997)). "The requirement's purpose is to 'ensure[ ] that the class will be certified only when it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."' *Id*. (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 104 (2d Cir. 2007)) (quoting *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231). "Therefore the requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Id*. (quoting *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002)).

Plaintiff cannot establish that the claims of BOH employees and a subgroup of the Putative Subclass, bussers, are fairly encompassed by her claims. In support of her motion for class certification with respect to the Putative Class, Plaintiff alleges that Defendants: (1) implemented an invalid tip-credit for the Putative *Subclass*; (2) required the Putative *Subclass* to perform uncompensated job duties; and (3) subjected the Putative Class to "improper meal credit deductions, for which employees did not receive meals and/or did not meet the requirements for a deduction." *See* Preliminary Statement of Plaintiff's memorandum of law in support of her motion for class certification ("Plaintiff's Brief"). For the reasons set forth below, Plaintiff fails to satisfy the commonality, typicality, and adequacy requirements of FRCP 23(a) as well as the predominance requirement of FRCP 23(b)(3).

**B.      PLAINTIFF FAILS TO SATISFY COMMONALITY AND TYPICALITY REQUIREMENTS FOR BOH EMPLOYEES AND BUSSERS**

Beyond asserting that the meal credit deduction was applied to all employees, which is inaccurate, the only support Plaintiff provides to include BOH members within the Putative Class is a self-serving declaration limited to Plaintiff's knowledge of her limited experience as a FOH employee and rife with inaccuracies and/or substantial omissions, which will be addressed in further detail below.

First, in her declaration, Plaintiff asserts that Defendants "automatically" deducted a meal credit from her paycheck even though "they were aware that [she] was not consuming their meals at times" as "there were such small amounts of food, [she] often found there was barely anything left when it was [her] turn to eat." *See* Plaintiff's Declaration, ECF No. 42, at ¶ 13. Plaintiff further asserts that when she was provided a meal, it was "a family meal consisting of only two items" and that her co-workers, all fellow FOH employees, experienced similar issues. *Id.*

4

In the only instance where Plaintiff purports to champion the cause of BOH employees, she relies exclusively on her own declaration testimony and the alleged conversations she had with other FOH staff. Plaintiff's claim relies on her baseless allegations that she, along with other *tipped* employees, did not eat because there was not enough food left and that the meals only ever consisted of two items. These allegations are simply false. *See* accompanying Declaration of Brice Mastroluca ("Mastroluca Declaration").

Plaintiff apparently made no attempt to corroborate her recollection of family meals with any of MC UES's BOH staff and fails to provide any specific details of any of the meals she allegedly ate (or allegedly did not eat). Plaintiff does not clarify whether FOH and BOH staff had separate family meals, who was in charge of preparing family meals, whether the employees had any say in what was cooked, or any other details. *See Balverde*, 2017 WL 1954934, at *4 (In FRCP 23(b)(3) class action in which plaintiff alleged defendant wrongly withheld gratuities in addition to minimum wage, overtime, and spread-of-hours pay, the court granted certification for FOH employees but denied certification for BOH employees for lack of commonality where "[t]he only allegations suggesting that Defendants' failure to pay overtime premiums extended to back of the house employees are Plaintiffs' statement that this was 'a corporate policy that applied to all non-management employees,' and that they 'overheard conversations' amongst kitchen workers and dishwashers.").

Second, Plaintiff's contention that certain employees, specifically bussers, were improperly classified as tipped employees requires an individualized inquiry into the job title and duties of these individuals that conflicts with commonality and typicality requirements. *See Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 451 (S.D.N.Y. 2005) ("Courts frequently have found that the requirement was not met where, notwithstanding the presence of

common legal and factual issues that satisfy the commonality requirement, the resolution of individual claims for relief would require individualized inquiries."); *Eduoard v. Nikodemo Operating Corp.*, 18-cv-5554 (BMC), 2019 WL 3557687, at *2 (E.D.N.Y. Aug. 5, 2019) (in FLSA and NYLL class action in which plaintiff asserted that defendants underpaid him by rounding his hours when determining his compensation the Court determined individualized inquiry would predominate over any common inquiry where "[d]etermining whether defendants' rounding policies resulted in systematic under-compensation of employees would involve not only a review of paper records but also depositions to determine how employees spent their time and whether they requested and received supplemental cash from defendants after complaining about any perceived under-compensation"); *Suvill v. Bogopa Service Corp.*, 11-cv-3372 (SL) (RER), 2014 WL 4966029, at *8 (E.D.N.Y. Sept. 30, 2014) (Court agreeing with defendants' argument that "the individualized nature of plaintiffs' claims defeats the commonality and typicality prongs of Rule 23(a) and the predominance requirement of Rule 23(b)(3)").

In her declaration, Plaintiff alleges that Seth Rivera ("Rivera") and Isaias Santiago Garcia ("Garcia") were categorized as bussers but, in reality, were actually polishers. Plaintiff's contention that these individuals were in fact non-tipped workers relies on her allegation that Rivera and Garcia were separated from the "actual group of bussers" by "XXXX' which was "meant to indicate that [Rivera] and [Garcia] were not truly bussers but actually non-tipped workers." Plaintiff's Declaration, ECF No. 42, at ¶ 14; *see* Exhibit 1 to Plaintiff's Declaration, ECF No. 42-1. Plaintiff, however, provides no basis for this interpretation and makes no effort to explain the placement of "XXXX" the five other times it appears in the tip record. *See id*. Further, and despite referencing the portion of Defendants' pay records that encompasses Rivera and Garcia's payment history as an exhibit in support of her motion, Plaintiff conveniently omits that

6

both Rivera and Garcia were identified as bussers on Defendants' payroll records throughout their employment at MC UES.  *See* **Exhibit 1**, attached to Mastroluca Declaration.

Plaintiff's assertions regarding Valentino and Abraham are similarly flawed.  Plaintiff refers to an assignment sheet from March 17, 2023, in which Valentino was listed as a polisher and Abraham as a Floater but provides no support, in any form, that they participated in the tip pool for this shift.  *See* Exhibit 1 to Plaintiff's Declaration, ECF No. 42-1.

Third, Plaintiff's failure to demonstrate a common policy or practice is further demonstrated with respect to her time-shaving allegations.  Plaintiff asserts that, for morning shifts, employees at MC UES were required to start work at 10:00 a.m. in order to set up the dining area "even though dining service didn't begin until 11:00 a.m."  Plaintiff's Declaration, ECF No. 42, at ¶ 7.  Plaintiff further alleges that twice a month, tipped employees were required to "clock out, stay behind and count tips, which took at least half an hour."  Plaintiff's Declaration, ECF No. 42, at ¶ 8.  In actuality, dining service at MC UES starts at 11:00 a.m. only twice a week, on Saturday and Sunday.  *See* Mastroluca Declaration at ¶ 6.  Dining service begins at noon during the remainder of the week.  *See id*.  Further, the latest MC UES is open for dining service is 10:30 p.m. on Friday and Saturday.  *See id*.  Dining service closes at 10:00 p.m. the remainder of the week.  *See id*.

As is typical for most, if not all, restaurants, shifts for employees, including BOH staff, at MC UES begin before the restaurant opens for dining service and continue after the restaurant closes to diners.  *See* Mastroluca Declaration at ¶ 8.  Employees, who are paid during this time, set up the restaurant for the upcoming day so customers can be served as soon as the restaurant opens. *See id*.  Similarly, while employees at MC UES can begin to break down the restaurant while dining service is still open – this includes cleaning tables and counting tips – shifts include time to

7

break down the restaurant after dining service ends. *See id*. Defendants, including MC UES, have never implemented any time-shaving policies. Although all employees, both FOH and BOH, were scheduled to start and end work before the restaurant opened and closed – time which they were paid for – Plaintiff's allegations of time shaving, in her motion for class certification, are limited strictly to tipped employees. If Plaintiff truly understood the policies that applied to BOH staff at MC UES, she could have identified this herself.

### C. PLAINTIFF FAILS TO SATISFY ADEQUACY REQUIREMENT FOR BUSSERS

Plaintiff has not established that she is an adequate class representative for the bussers employed at MC UES. By asserting that certain employees classified as tipped employees were in fact non-tipped employees Plaintiff attempts to have her cake and eat it too. Plaintiff identifies four individuals whom she asserts were categorized as bussers but were actually non-tipped workers. If these individuals were, in fact, non-tipped employees, they would not be entitled to any of the relief that might be awarded to the Putative Subclass. Further, Plaintiff does not limit her assertions to these four individuals but asserts that all purported silver polishers and floaters were improperly identified as bussers and unlawfully participated in the tip pool.

While even a "fundamental conflict . . . can be ameliorated by separating the class into 'homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel,'" this would work to the disadvantage of the members of the Putative Class whom Plaintiff asserts do not belong to the Putative Subclass. In her attempt to certify a class that incorporates both tipped and non-tipped workers and that encompasses a subclass of tipped employees, Plaintiff, at the same time, endeavors to exclude individuals from the subclass – denying them the benefit of being included in said subclass.

8

### D.     PLAINTIFF FAILS TO SATISFY PREDOMINANCE REQUIREMENT FOR BUSSERS

Plaintiff also fails to satisfy to the predominance requirement with respect to bussers. As addressed in the context of commonality and typicality, whether the bussers that Plaintiff contends are actually non-tipped workers are, in fact, non-tipped workers – whether their primary duties involved non-tipped work – is not an issue similar to the rest of the class. "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Breitman v. Xerox Educ. Services, LLC*, 12-cv-6583 (PAC), 2014 WL 5364103, at *4 (S.D.N.Y. Oct. 22, 2014) (internal quotation omitted).

Again, the analysis of which bussers' duties primarily consisted of tipped work versus which bussers' duties primarily consisted of non-tipped work requires individualized inquiries to assess whether these individuals were misclassified. *See Breitman*, 2014 WL 5364103, at *5 (in class action where plaintiff alleged that defendants misapplied payments toward student loans and failed to apply certain benefits to which she was entitled, the court determined that predominance was not met where "[t]he threshold question of eligibility for the relevant benefits requires individualized inquiries regarding putative class members' paying or failing to pay on time and the circumstances surrounding each payment"). Therefore, Plaintiff fails to satisfy the predominance requirement for bussers employed at MC UES.

9

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion for class certification be denied.

Dated: New York, New York  
       January 8, 2025

Respectfully Submitted,

By: */s/ David J. Grech*  
David J. Grech  
Gordon Rees Scully Mansukhani, LLP  
1 Battery Park Plaza, 28th Floor  
New York, NY 10004  
Telephone: (212) 269-5500  
Facsimile: (212) 269-5505  
dgrech@grsm.com

*Attorneys for Defendants*